IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PETER J. LONG,

                Plaintiff,

v.

MARIO L. STEGER,

                Defendant.

OPINION AND ORDER

17-cv-295-slc

---

*Pro se* plaintiff Peter Long has been permitted to proceed on claims that Correctional Officer Mario Steger violated state and federal law when Steger handcuffed Long with a single set of handcuffs behind his back. Before the court is defendant Steger's motion for summary judgment. Dkt. 19. Long did not submit any briefing, proposed facts, evidence, or any other substantive response to defendant's motion, despite being given two extensions by the court. *See* dkt. 29, 33. While Long's lack of a response does not automatically result in a favorable decision for defendant, after considering defendant's briefing, proposed facts, and evidence, I conclude that no reasonable jury could find in favor of Long and I am therefore granting defendant's motion for summary judgment.

UNDISPUTED FACTS[1]

At all times relevant to this case, plaintiff Peter Long was incarcerated at the Oakhill Correctional Institution ("OCI") in Oregon, Wisconsin and defendant Mario Steger was employed by the Wisconsin Department of Corrections ("DOC") as a Correctional Officer at OCI.

---

[1] The following facts are material and undisputed, unless I note otherwise. I have drawn these facts from defendant's findings of fact and the evidence cited in those proposed facts, as necessary.

On September 9, 2016, Officer Steger was assigned to escort Long from the Restrictive Housing Unit ("RHU") back to Long's cell in general population. To transport Long, Steger handcuffed Long's hands behind his back with a single handcuff. This is the standard handcuffing procedure, although an inmate can request a medical restriction to be handcuffed in front or with two handcuffs instead of one. This request can be made by filling out form DOC 3035 and submitting it to the Health Services Unit ("HSU").

Prior to transporting Long on September 9, 2016, Steger looked to see whether or not Long had any medical handcuffing restrictions noted in the state prison computer system. Long had previously made claims to Steger than he had a two-handcuff restriction even though he did not, which is why Steger specifically confirmed Long's handcuffing restrictions. Steger additionally asked Long whether he had any restrictions regarding having his hands behind his back, to which Long responded that he did not.

Steger then placed one handcuff on Long's wrist and double locked it. Steger instructed Long to place his other wrist the remaining open cuff; Long did so, and Steger doubled locked it. Long was then escorted by Steger from RHU to his cell, which took approximately two minutes. Steger has "no recollection" of Long complaining during this trip that he was in any discomfort or pain.

On at least five occasions prior to this incident, Steger had explained to Long how he could get a medical handcuffing restriction. Another correctional officer -- Officer Mitchell Maly -- had at least once explained to Long that he would have to submit DOC form 3035 to receive a medical handcuffing restriction. Officer Maly also testified that he had previously transported Long multiple times using one set of handcuffs behind his back.

On September 11, 2016 -- two days *after* Long was transported by Steger from RHU to general population -- Long submitted a Health Services Request ("HSR"), which was received on September 12, 2016. In the form, he requested an appointment with a doctor to treat his lower back pain. He wrote:

> I am out of Seg. now. I need to see the DOCTOR to fix my lower back which is very painful (8 out of 10 pain level). An MRI was done at UW-Madison with follow-up with Dr. Grossman at WMR. He recommended a Pain Management Specialist.

(Held Decl., Ex. 1001 (dkt. #25-1) 2.)

Long submitted another HSR on September 14, 2016, which was received on the following day. In it, he requested, among other things, a "thick medical mattress" because of his lower back injuries. He again submitted an HSR requesting a medical mattress on September 27, 2016.

OPINION

Summary judgment must be granted if a movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the movant does not bear the ultimate burden of persuasion at trial, he may establish his entitlement to summary judgment either by producing evidence that negates an essential element of the opposing party's case or by pointing out the opposing party's inability to prove an essential element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts must be viewed in the light most favorable to the nonmovant, and all reasonable inferences must be drawn in his favor. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017); *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019).

In screening Long's initial complaint, I granted him leave to proceed on claims of excessive force, deliberate indifference, battery, and assault against defendant Steger. Dkt. 8. Defendant now argues that Long has failed to produce evidence that could lead a reasonable jury to find in his favor and also that Steger is immune from suit as to all claims. I address each of defendant's arguments below:

## I. Constitutional Claims

### A. Excessive Force

For a plaintiff to succeed on an excessive force claim, he must submit evidence that the prison official acted "wantonly or, stated another way, 'maliciously and sadistically for the very purpose of causing harm.'" *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Relevant factors are: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of threat to the safety of staff and inmates, as reasonably perceived by the responsible officials based on the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321. Prison officials are given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

On the one hand, Steger's and Maly's testimony does suggest that Long had previously complained about being cuffed behind his back with a single set of handcuffs, which raises the reasonable inference that Steger knew that such a practice would cause Long pain or discomfort. However, even viewed favorably, this evidence alone does not support a reasonable claim of

4

excessive force, especially when considered in the context of the other evidence in the record. Specifically, the undisputed record shows that Long was only handcuffed for two minutes, that Steger does not recall Long complaining of pain during the trip, and that Long did not report any injuries stemming from the incident in HSRs he submitted shortly thereafter -- facts that all suggest that the amount of force was limited and that any injury was insignificant. Further, Steger testified that, prior to escorting Long, he confirmed that Long did not have any medical handcuff restrictions. This establishes that his use of a single handcuff was not malicious or sadistic, but rather standard practice.

While valid excessive force claims based on overly tight handcuffs have been recognized in this circuit, those cases all involved a significantly longer handcuffing period and greater injury than that present here. *See Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) (triable issues of fact existed on plaintiff's excessive force claim where she had been handcuffed so tightly that she lost feeling in her hands, the officers refused to loosen the handcuffs when told of her numbness, and she had to undergo two carpal tunnel surgeries necessitated by the handcuffing); *Herzog v. Village of Winnetka*, 309 F.3d 1041 (7th Cir. 2002) (plaintiff's excessive force claim allowed to proceed to trial where, among other assertions of force, officer shoved plaintiff to the ground, cracked her tooth, and waited over an hour to loosen handcuffs that she complained were too tight). Indeed, in *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), the Seventh Circuit rejected an excessive force claim that involved conduct more questionable than that evinced here. *Id.* at 666. There, handcuffs were "applied somewhat too tightly," plaintiff was cuffed for about twenty-five to thirty minutes, he complained to two officers about the handcuffs, and he experienced redness after the incident. *Id.* Here, by contrast, Long was handcuffed for only two minutes and there is no evidence that he complained of or that he experienced any lasting injury.

At screening I did note that, in his complaint, Long alleged that other correctional officers routinely used two pairs of handcuffs and further that he had not been behaving in a matter that would warrant the use of a single cuff. To the extent that Long's allegations implied that *any* force was unnecessary, I noted that the use of force would *a foriori* be excessive. However, not only did Long fail to produce evidence to support his allegations, defendant proffered undisputed testimony that it was standard procedure to transport inmates using a single handcuff behind the back. In other words, there is no evidence that "force" actually was used here. It was a routine transport using standard cuffing procedures. Again, given the deference accorded to prison officials in maintaining order and safety, no reasonable jury could find that the Steger's use of handcuffs in this case was malicious and not a good-faith effort to maintain discipline and follow reasonable prison procedures.

### B. Deliberate Indifference

At screening, I noted that one way to interpret Long's allegations was that Steger's actions demonstrated deliberate indifference to a serious medical need. To succeed on such a claim, a plaintiff must show "(1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). Defendant argues that Long cannot prove this claim both because he did not suffer from an objectively serious medical condition and also because Steger did not act with deliberate indifference.

As to the first element, a serious medical condition "encompasses not only conditions that are life-threatening or that carry risks of permanent, serious impairment if left untreated, but also

those in which the deliberately indifferent withholding of medical care results in needless pain and suffering." *Reimann v. Frank*, 397 F. Supp. 2d 1059, 1077 (W.D. Wis. 2005) (*Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)). Defendant first argues that Long cannot prove this element because he did not have any kind of handcuffing medical restriction, despite being told numerous times that he could request such a restriction. However, just because Long did not have a formal restriction does not negate the existence of an objectively serious medical condition. The Seventh Circuit has said that such a condition "is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d, 645, 653 (7th Cir. 2005) (emphasis added) (citing *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005)).

Here, the record contains evidence that Long did have medical conditions that might have resulted in needless pain if handcuffed behind his back with a single handcuff. Specifically, his medical records suggest that he had reported serious back pain both before and after the September 9, 2016, incident. Further, Steger and Maly had previously informed Long about the process to receive a medical handcuffing restriction, which could create a reasonable inference that Long had previously complained that the standard handcuffing practice was painful to him. A prisoner's reports of pain can be evidence of an objectively serious medical condition. *Greeno*, 414 F.3d at 655. That said, the evidence supporting Long's position is at best sparse and inferential. Even if I were to deem this a close call, Long has not established deliberate indifference, so his claim fails.

A claim of deliberate indifference to a serious medical condition requires proof that defendants acted with "a sufficiently culpable state of mind." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (quoting *Greeno*, 414 F.3d at 653). While a prisoner does not need to

7

"establish that officials intended or desired the harm that transpired," *Greeno*, 414 F.3d at 653 (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002)), deliberate indifference is more than negligence or even gross negligence. *Figgs v. Dawson*, 829 F.3d 895, 902-03 (7th Cir. 2016). Specifically, the official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825 (1994).

It is true that a reasonable jury could infer that Steger knew that Long experienced pain or discomfort when handcuffed using the standard method. Steger testified that Long "had made prior claims the had a two-handcuff medical restriction even though he did not" and also that he had explained to Long at least five times how he could get a medical restriction. (Steger Decl. (dkt. #22) 6, 7.) Nevertheless, before escorting Long on September 9, 2016, Steger also confirmed that Long had not received a medical restriction by asking Long and by checking the state prison computer system. In general, non-medical officials are entitled to "reasonably defer to the judgment of medical professionals regarding inmate treatment." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). Given that Long knew how to apply for a medical handcuff restriction, Steger was entitled to defer to HSU's determination regarding whether or not such a restriction was warranted.

Moreover, the undisputed facts show that Long himself placed each hand in the handcuffs, that he did not complain of pain or discomfort during the trip, and that he was only cuffed for two minutes. Considering the evidence as a whole, no reasonable jury could conclude that Steger knew of and disregarded any excessive risk to Long's health or safety. Therefore, Long's deliberate indifference claim cannot survive summary judgment.

### C. Qualified Immunity

Defendant also argues that plaintiff's federal claims must be dismissed because Steger is entitled to qualified immunity. "Qualified immunity protects government officials from damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 549-50 (7th Cir. 2017)). Courts must evaluate "(1) whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). Here, as discussed above, Long cannot meet the first element; therefore, qualified immunity protects Steger from suit on the federal claims in this case.

## II. State Law Claims

Finally, Long was permitted to proceed on state law battery and negligence claims against Steger. In Wisconsin, a battery is an intentional, unpermitted contact with another. *Estate of Thurman v. City of Milwaukee*, 197 F. Supp. 2d 1141, 1151 (E.D. Wis. 2002) (citing *McCluskey v. Steinhorst*, 45 Wis. 2d 350, 357, 173 N.W.2d 148 (1970)). Negligence involves four elements: (1) a duty of care; (2) a breach of that duty; (3) causation; and (4) damages. *See Paul v. Skemp*, 2001 WI 42, 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865 (2001) (citing *Nieuwendorp v. Am. Family Ins. Co.*, 191 Wis. 2d 462, 475, 529 N.W.2d 594 (1995)).

Defendant primarily argues that Steger is protected from these state law claims by the governmental immunity conferred in Wis. Stat. § 893.80(4), which provides that:

9

> No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof . . . or against any of its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Wis. Stat. § 893.80(4).

Case law further specifies that while "a public officer or employee is not shielded from liability for the negligent performance of a purely ministerial duty," discretionary acts performed within the scope of the officer's official duties are immune from suit. *Kimps v. Hill*, 200 Wis. 2d 1, 10, 546 N.W.2d 151, 156 (1996).

> The test for determining whether a duty is discretionary (and therefore within the scope of immunity) or ministerial (and not so protected) is that the latter is found "only when [the duty] is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion."
>
> *Id.* at 10-11 (quoting *C.L. v. Olson*, 143 Wis. 2d 701, 422 N.W.2d 614, 617 (1988)).

Because a ministerial act is one prescribed by law, a plaintiff arguing that an act is outside of governmental immunity must identify a source of law or policy imposing the ministerial duty. *See Pries v. McMillon*, 2010 WI 63, 31, 326 Wis. 2d 37, 784 N.W.2d 648. Although not part of the summary judgment record, plaintiff cited to various DOC regulations regarding the use of restraints in his complaint. Even if these records were accurately reproduced and could be properly used as evidence at trial, however, they do not show that Steger had a ministerial duty to use a double handcuff, front handcuff, or otherwise was required to restrain Long in a different way than he did. The regulations provide generally that inmates "shall not be restrained in a manner that would jeopardize their health" (Compl., Ex. 2 (dkt. #1-2) 5) and that restraints may

not be used "[i]n a way that causes undue physical discomfort, [or] inflicts physical pain" (Compl., Ex. 3 (dkt. #1-3) 1). However, these policies leave significant discretionary authority to the officer and do not "prescribe[] and define[] the time, mode and occasion" for the performance of the duty "with such certainty that nothing remains for judgment or discretion." *Kimps*, 200 Wis. 2d at 11.

Indeed, if anything, the evidence suggests that Steger followed DOC policy in confirming that Long had no specific handcuffing restrictions before handcuffing him in the standard way. Accordingly, I conclude that Steger violated no ministerial duty in handcuffing Long on September 9, 2016, and that he is therefore protected from state tort liability under the governmental immunity statute.

ORDER

IT IS ORDERED THAT:

1. Defendant's motion for summary judgment (dkt. 19) is GRANTED.
2. Defendant's motion to stay (dkt. #39) is DENIED as moot.

Entered this 20th day of February, 2020.

BY THE COURT:
/s/
STEPHEN L. CROCKER
Magistrate Judge